## N. M. DAVIS ET AL. v. C. H. MILLS.

### Decided December 17, 1910.

**1.—Trespass to Try Title—Heirship—Evidence.**

Heirship may be proved by circumstantial evidence.   In a suit of trespass to try title, tried in 1908, testimony of ·a former owner of the land in controversy, that in 1873 and 1878 he obtained deeds from two persons whom he knew to be heirs of the original grantee; that he made inquiry as to any other heirs, and could find none; that since 1870 he had heard of no other person claiming to be an heir of said grantee, and that no one had ever disputed the fact that he had obtained deeds from all the heirs; and that since that time he had lived continuously within three miles of the land—held admissible as tending to prove sole heirship of the grantors of the witness.

**2.—Same—Part Owner.**

The owner of an undivided interest in a tract of land may, in trespass to try title, recover the entire tract from a stranger to the title.

**3.—Appeal—Objection to Evidence—Practice.**

An appellate court will consider only such objections to evidence as were made on the trial in the court below.

**4.—Same—Improper Evidence—Harmless Error.**

An assignment of error complaining of the admission of improper testimony will not be sustained when it appears that other testimony to the same effect was admitted without objection.

**5.—Trial—Objection to Evidence—Practice.**

If one or more of eleven deeds offered in evidence was material and admissible upon any issue, a general objection to the deeds collectively that they were immaterial, should be overruled.   Rule applied.

**6.—Trespass to Try Title—Charge—Construction.**

In a suit of trespass to try title, the court, among other matters, charged the jury that in order for plaintiff to recover it must be proved by a preponderance of the evidence that the land sued for, or some of it, lies on the particular grant alleged, and is owned by him either in its entirety or in part. Held, when read in the light of other portions of the charge, not subject to the construction that plaintiff was entitled to recover the land sued for, whether embraced in his title papers or not, if owned by him in its entirety or in part. A charge should be considered and construed as a whole.

**7.—Charge—Erroneous Statement of Case—Practice.**

When an appellant is not satisfied with the statement of the court in its charge as to the issues made by the pleading and evidence, he should save the point by bill of exception, and set forth in his brief sufficient facts to enable the appellate court to determine what the issues were.   Otherwise it will be presumed that the charge was correct.

**8.—Boundaries—Evidence—Actual Survey.**

When the lines and corners of a tract of land, judged by the calls in the deed, are uncertain, and it is therefore uncertain what particular land is embraced in the deed, the court may charge the jury that they might look to the lines and corners made and established in the original survey of the tract, if one was made, in determining the lines and corners; and this, although there was no evidence of a mistake in the calls in the deed.

**9.—Same—Adjoining Surveys.**

Where the position of lines and corners of a survey is uncertain, it is permissible for the jury to consider the field notes of adjoining surveys which were made at or about the same time.

**10.—Same—Verdict.**

Verdict in a boundary case considered, and held sufficiently certain.

Appeal from the District Court of Navarro County. Tried below before Hon. L. B. Cobb.

*R. B. Malloy* and *Stone & Stone,* for appellants.

*R. S. Neblett* and *Callicutt & Call,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—The appellee brought this suit against appellants to recover about 73 acres of land, alleged to be a part of the Thomas Morrow league survey, situated in Navarro County. He alleged ownership of the land in himself on January 1, 1904, and that on the 3rd day of January, 1904, the defendants, Davis and Walton, entered upon about 44 acres of the land sued for and ejected him therefrom and that on January 1, 1905, the defendant Burke entered upon about 29 acres of said land and ejected him therefrom, and that each of the defendants unlawfully withholds from him the possession of the tracts so taken by them. Defendants jointly answered by general denial and pleas of "not guilty," and each plead limitation of ten years as a bar to the plaintiff's cause of action. The case was tried at the October term, 1908, and resulted in a verdict of a jury and judgment thereon in appellee's favor for the land sued for. Defendants' motion for new trial having been overruled they prosecute an appeal.

The Thomas Morrow survey called for one league of land. On December 3, 1842, the estate of Thomas Morrow, deceased, conveyed to the estate of Jesse Webb 1714 acres of land, the south part of the league, the deed describing the land conveyed as follows: Commencing at the S. W. corner of said Morrow League at a stake, from which an Elm 4 in. dia. brs. N. 76 W. 10 vrs., and a Plum tree 4 in. dia. brs. S. 28 W. 15 vrs. Thence N. 60 E. 5000 vrs. to a stake, from which an Ash 24 in. dia. brs. N. 56 E. 10 vrs., and an Ash 24 in. dia. brs. S. 33 E. 8 vrs. Thence N. 30 W. 1935½ vrs. to a stake on said Morrow's east boundary line. Thence S. 60 W. 5000 vrs. to a stake on said Morrow's west boundary line. Thence S. 30 E. 1935½ vrs. to the place of beginning; containing, as before stated, 1714 acres.

Five hundred and five acres off the north side of this 1714 acres was subsequently conveyed to H. L. Molloy.

In a partition of the Thomas Morrow League, a tract beginning on the west line of the league and extending clear across the survey to its east line had been set aside to Elizabeth Bowles, one of the heirs of Thomas Morrow. Between the Bowles tract and the 505 acres conveyed to H. L. Molloy there was an excess; 44 acres of the land involved in this suit is out of the east end of said excess and 29 acres is off the east end of the 505-acre Molloy tract.

It is insisted in the first assignment of error that the court erred in admitting in evidence the testimony of the witness, H. L. Molloy. One link in plaintiff's title required proof that Molloy had acquired title of the heirs of Thomas Morrow to the land sued for. He attempted to prove this by Molloy. The evidence showed that Thomas Morrow died between 1842 and 1843. On the 16th of March, 1870, George W. Morrow made a deed to N. W. Parminter conveying his interest in the Morrow league north of the Webb 1714-acre tract and south of the Bowles tract. N. W. Parminter made a deed to R. B. Molloy and W. H. Molloy conveying the same interest. By mesne conveyances this interest was conveyed to appellee Mills. On the 30th day of May, 1873, Morrow and Mrs. Ellis conveyed to H. L. Molloy. The land described in this conveyance begins at a stake in the W. line of the Thomas Morrow league, the N. W. corner of the 1714 acres conveyed to Webb; and runs thence with the N. line of the Webb to the E. line of the Morrow, and thence in a northerly direction with the E. line of the Morrow to the S. E. corner of 976 acres of the Morrow deeded to Elizabeth Bowles; and thence with the S. line of the Bowles to the W. line of the Morrow; thence in a southerly direction with the W. line of the Morrow to the beginning. This land by mesne conveyances passed to the appellee, Mills. Molloy testified that he knew personally Mrs. Parminter. That Mrs. Ellis was a daughter of Thomas Morrow. That George Morrow and Mrs. Parminter were brother and sister. That Mrs. Parminter was a grand-daughter of Thomas Morrow. George Morrow was a son of Tom Morrow, who was a son of Thomas Morrow. Both are dead. Molloy took deeds from the parties in 1873 and 1878. He made inquiry as to any other heirs and could find none. He had heard of no other person claiming to be an heir of Thomas Morrow from whom he did not take a deed, and that since 1870 he had heard of none. That no one disputed the fact that he had deeds from all the heirs of Thomas Morrow; and that no person had claimed the land as such heir. Molloy had lived continuously in Corsicana since his purchase and only about three miles from the land involved.

There was no error in admitting the testimony of H. L. Molloy. It tended to show that Mrs. Bowles, Mrs. Parminter and George W. Morrow, under whom Molloy and appellee claimed, were heirs, if not the only heirs, of the patentee Thomas Morrow. These facts could be proved by circumstantial evidence.

Again, if we were to concede, which we do not, that it was error to

admit the testimony of Molloy, it was harmless and can not be cause for reversal. for two reasons: (1) because a part of the Mills' title comes through the Webb heirs, and proof of the heirship of the Webbs was made; (2) because a part of the Mills' title comes through the Morrow heirs, and proof of the heirship of at least two of the heirs of Thomas Morrow was made. In either event Mills had sufficient title to recover against the defendants who failed to show title to any part of the Morrow survey.

2. It is contended that the trial court erred in admitting certain testimony of plaintiff. The plaintiff, while testifying in his own behalf, was permitted, over objection, to testify as follows: . "When you bought this fifty acres from Mack Elliott did you have it surveyed, and did your surveyor make a report to you?" Ans. "Yes, sir." "Did they report to you that some of the Elliott fifty acres was east of Chambers Creek?" Ans. "Yes, sir." "About what amount did they report?" Ans. "They said between three and four acres."

The proposition presented is that the report of Elliott was not binding on the defendants, and the location of the fifty acres could not be fixed by such report, and the testimony was self-serving. The only objection made to this testimony in the trial court was that it was not in rebuttal, and the act of Elliott in pointing out the corner was binding on no one. These are the only exceptions this court can consider. Rector v. Hudson, 20 Texas, 234; Wheeler v. Tyler, S. E. Ry. Co., 91 Texas, 359-360. The exception that the evidence was not in rebuttal is not urged in this court. It is urged that the report of Elliott was not binding. This can not affect the admissibility of the testimony. Neither the bill of exceptions nor the brief shows whether Mills was testifying to a statement made by J. M. Elliott, from whom he purchased, or by Elliott, who did the surveying. The questions propounded to Mills, as shown by the bill of exceptions, did not indicate that the statement inquired about was made by Elliott, the surveyor, or by some other surveyor. The fact is that both Elliott and Lee made a survey for Mills at or about the time of his purchase. The objection is that the statement of Elliott would not be binding, when there is nothing in the testimony of Mills objected to which indicates that he was repeating the statement or report made by Elliott.

But conceding that Elliott made the statement and that Mills was repeating Elliott's statement, there was no objection that the testimony was hearsay, or that the statement of Elliott repeated by Mills was not under oath, and therefore the admissibility of the testimony for that reason is not in question. If Elliott, who did the surveying, was on the stand he could certainly testify that about three acres of Mills' land was east of the creek. Elliott, from whom Mills purchased, could testify to the same facts.

Again, if there was error in admitting the testimony of the appellee Mills as to the report of the surveyors, to the effect that a portion of his land was east of the creek, such error was harmless in view of the admission of like testimony without objection, and hence such error is

not ground for reversal.   Lindsey v. White, 61 S. W., 438; International & G. N. Ry. Co. v. Kindred, 57 Texas, 491.

3.   The fourth assignment complains that the court erred in admitting in evidence the several conveyances shown by bill of exception No. 4. This bill of exception shows that one general objection was urged to eleven deeds, because they were immaterial and irrelevant.   The bill was qualified by the court so as to confine appellants to one objection— that of immateriality.   There being a general objection of immateriality urged to the introduction of all the deeds and not to any particular one, if any one of the deeds was admissible, this assignment should be overruled.   St. Louis S. W. Ry. Co. v. Frazier, 87 S. W., 400; New York, etc., Ry. Co. v. Gallaher, 79 Texas, 689; Galveston, etc., Ry. Co. v. Gormley, 91 Texas, 401; Holt & Bailey v. Hunt, 18 Texas Civ. App., 363.   The deeds executed by the defendants (appellants), Davis, Walton and Burke, included within the objection, were admissible as statements and declarations against interest showing the location of the east line of the Morrow league and fixing the same at the point claimed by plaintiff.   The deed executed by Bright to Burke was admissible to show the location of the S. W. corner of the J. P. McCandless survey, which is a common corner with the S. E. corner of the Morrow and is in the S. line of the Morrow and the N. line of the S. F. McCandless survey.

4.   The fifth assignment is as follows:  "The court erred in telling the jury, in paragraph 3 of the charge, that plaintiff should recover if the land sued for or some of it lies on the Morrow survey and is owned by him either in the entirety or in part, because under the evidence there was no joint ownership between plaintiff and any other party of any part of the land sued for, and plaintiff was entitled to recover only such part of the land sued for as he showed title to."

The proposition presented is that plaintiff was entitled to recover only such land as was shown to be embraced in his deeds or title papers, and to charge the jury that he was entitled to recover the lands sued for, if owned by him either in the entirety or any part, was error.   This proposition is not sustained.   The paragraph of the charge complained of reads:  "In order that plaintiff should be entitled to recover, it must be proved by a preponderance of the evidence that the land sued for, or some of it, lies on the Morrow survey and is owned by him either in the entirety or in part."   The charge of the court should be considered as a whole.   The sixteenth and seventeenth paragraphs are as follows: "The deed of Morrow to Webb called for the east line of the Morrow league and conveyed the land up to the true east line unless there is in the deed a call for a point or object that is found to be to the west of the east line of the survey by which the east boundary of the Webb tract may be located west of the east line of the survey; and so as to all the intermediate deeds from Webb down to plaintiff; when calls are made for the east line of the Morrow the land conveyed must extend to said line unless there be calls for objects that are shown to limit the land conveyed to a line short of the east line of the survey."   "If under

the last above paragraph, you from the testimony find that plaintiff owns a part of the said Webb 1714 acres, and that defendants Walton and Davis or either of them have taken possession of part of what belongs to plaintiff, you will find for plaintiff such land, unless you should find for them on limitation." In the eleventh paragraph of the charge the jury were instructed that the plaintiff can not recover unless the evidence shows title in him, but a prior possession is, as against one who shows no right, prima facie evidence of title. Again, in the twelfth paragraph they were told to establish title in plaintiff the evidence must show that the land sued for is on the Morrow survey and within the field notes and descriptions given in the deeds coming down from the original owner to plaintiff, excepting, as above explained, a prior possession if such there was in plaintiff, and the defendant does not have to prove title except in the case of prior possession above explained. Construing the charge as a whole the jury must have understood it to mean that before plaintiff can recover anything he must prove he owns at least a part of the land sued for. The paragraph complained of does not instruct the jury that plaintiff is entitled to recover all of the land sued for upon proof of title to a part of it. The charge means, and the jury must have so understood it, that plaintiff could recover only that part of the land which lies upon the Morrow survey to which he has proved title.

5. The sixth assignment of error is as follows: "The court erred in the fifth paragraph of the charge by instructing the jury that the land in controversy lies between a line running S. 30 E. from a point 5277 vrs. from the N. W. corner of the Morrow league, and a line running S. 30 E. from a point 5628 vrs. from said N. W. corner, and that both plaintiff and defendants contend that the land in controversy lies between these two lines; because to so charge the jury was to misstate or misrepresent the contention of the defendants as to such lines; and such charge was a direct charge on the credibility of the witnesses and the weight of the evidence, in this, the defendant did not claim the E. line was at least 349 vrs. further W. than a line running S. 30 E. from a point 5628 vrs. from the N. W. corner of the league, and the distance of the two east lines, or alleged east lines, from the N. W. corner of the survey was the principal matter in dispute in the evidence and the most vital issue in the case."

It is urged in the proposition, that to assume in the charge to the jury that a disputed fact is undisputed and settled, is error. The paragraph of the charge reads: "The N. W. corner of the Morrow league is made the beginning corner in the patent and is not in controversy as to its location. The field notes in the patent then called for a line N. 60 E. 5000 vrs., thence S. 30 E. 5000 vrs.; and it is contended that the N. E. corner is more than 5000 vrs. from the N. W. corner, and the E. line more than 5000 vrs. from the W. line, the plaintiff claiming and seeking to prove that the N. line is 5628 vrs. long, and the E. line fixed by surveying S. 30 E. from a point 5628 vrs. from the N. W. corner; while defendants claimed that said N. line is at least 349 vrs.

less than plaintiffs assert, and that the E. line of the Morrow is at least 349 vrs. further W. than plaintiff claims. The disputed land lies between these two alleged E. lines of the Morrow."

This assignment is overruled. The evidence is undisputed and without conflict that plaintiff claims the N. E. corner of the Morrow league is at a point 5628 vrs. N. 60 E. from the N. W. corner of the league, and that the true east line of the Morrow is fixed by running from such point S. 30 E. to the S. E. corner of the league. Defendants claim that the true east line of the Morrow league lies west of the line as claimed by the plaintiff at least 349 vrs. The petition describes the land sued for as being 349 varas wide. The appellants' witnesses fixed the lines of the disputed land, as charged by the court, not less than 349 vrs. apart. The record, as we view it, contains no evidence raising a conflict as to the distance between the two east lines of the Morrow survey as claimed by the parties.

6. Error is assigned to the seventh paragraph of the court's charge. This paragraph is as follows: "If the land in dispute between the plaintiff, and defendants Walton and Davis, is found to be on the Morrow survey, the plaintiff can not recover unless the same is owned by plaintiff. Plaintiff claimed some of it to be part of the fifty acres conveyed by H. L. Molloy to J. M. Elliott. The defendants contend that the said fifty acres is not on the Morrow survey even if they are wrong as to the position of the east line, and that the fifty acres should be located by lines beginning at the Bowles corner and running in a southeasterly direction to the N. E. corner of the Webb tract, thence S. 60 W. and N. 30 W. and N. 60 E. to make the fifty acres. It is uncertain what particular land was embraced in the deed; that is, the lines of the said fifty acres, judged by the calls in the deed, are uncertain. If you believe from the evidence that at the time Molloy sold Elliott, the fifty acres was run out, lines and corners established, then actual location of the land by its lines and corners may be considered as making certain the uncertain calls in the deed; and if you conclude that the land actually conveyed by Molloy to Elliott was that now claimed by plaintiff, and that Molloy owned the land claimed by plaintiff as the fifty acres, then plaintiff should recover, provided the same is on the Morrow survey and you do not find for defendants under their plea of limitation. Of course if the Bowles S. E. corner is on the Morrow E. line, plaintiff can not recover against Davis or Walton any part of the fifty acres even if the deed of Molloy to Elliott in its true intent and meaning cover the land in dispute."

This assignment is not sustained. The charge correctly stated appellants' contention. In their brief appellants state that, "in order that the issues on which the case was tried in the court below may fairly appear, it may be well to state that defendants resisted plaintiff's recovery on two grounds: (1) he failed to show title in himself to the land sued for and recovered by the decree rendered, admitting the evidence showed it was part of the Morrow league survey; (2) the legal and legitimate testimony showed the land sued for was not a part of

the Morrow survey, but other surveys owned by defendants." The appellants answered by plea of general denial, not guilty, and limitation of ten years. We have not discovered anything in the record showing that the court in the charge complained of did not fairly and correctly state the contention of appellants before the court and jury, and, in the absence of something in the record to the contrary, this court will accept the statement of the trial court as correct. Under the plea of not guilty every contention stated by the court could have been made. The statement therefore comes within the rule that every presumption will be indulged in favor of the ruling of the court. If appellants were dissatisfied with the statement of the court as to their contention with reference to the situation of the fifty acres of land, they should have saved the point by bill of exceptions and included sufficient facts to enable the court to determine correctly what the contention was. As the matter now stands, the trial court has stated the contention of appellants in that court, and appellants are contending in this court that this was not their contention, but they do not attempt to support their contention in a statement of facts or bill of exceptions. International & G. N. Ry. Co. v. Stewart, 57 Texas, 166; Beaumont Pasture Co. v. Preston, 65 Texas, 452.

The proposition is further urged that the court erred in submitting the issue as to whether the fifty acres sold by Molloy to Elliott were at the time of the sale run out and the lines and corners established. It is insisted that there was no testimony to support such issue.

It is further insisted that the court erred in telling the jury if the fifty acres were run out and the lines and corners established, they could look to these lines and corners to make certain the uncertain calls in the deed for the reason that the legal presumption arising from the deed is that the grantor intended to convey the very land described in the deed, and to overcome this presumption it must be shown there was a mistake in its calls, and that the intention of the grantor was to convey the land whose lines had been run out and corners established, and the evidence fails to show such mistake and intention.

The court did not err in submitting the issue as to the fifty acres. The lines and corners of the fifty acres, judged by the calls in the deeds, are uncertain. It is uncertain what particular land is embraced in the deed. The deed recites that the land conveyed is part of the headright of Thomas Morrow and is to begin at the S. E. corner of the Elizabeth Bowles partition set apart by commissioners of the probate court of Robertson County; thence with the east line of said survey in a southeasterly direction to the northeast corner of a survey deeded to Thomas Webb. There may be some doubt as to whether the east line referred to was the east line of the Morrow or of the Bowles or some other survey. It is to run in a southeasterly direction to the Webb corner, thence it was to run S. 60 W. with said line. Whether this was the line of the Morrow or the Webb may be involved in doubt. When the survey reaches the S. line of the Bowles the call is thence N. 60 E. There is a small discrepancy between the calls in the two sets of field notes of the

fifty acres. Besides, the Bowles corner was an unknown quantity. No trees mark it. In the deed it is not described; bearing trees are not given; the distance of the lines is not given; when the survey reaches the Webb corner it is said to be in a southeasterly direction from the beginning corner. The corner is not described, neither is the distance to the corner given. The Bowles corner is involved in obscurity and we think the testimony leaves its location in doubt.

It is further insisted that it was error to submit to the jury the question whether or not Molloy owned the land claimed by plaintiff as the fifty acres. It·is contended that there was no evidence that Molloy owned said land. This insistence is not sustained. Whether or not Molloy owned the fifty acres depended on the construction of his deeds and the survey made upon the ground, and the true location of the lines and corners.

7. The eighth assignment complains that the court erred in the ninth and eleventh paragraphs of the charge in submitting to the jury whether or not the land in controversy, or all the land in controversy, was embraced in the boundaries or descriptions in the deeds in plaintiff's chain of title, there being no evidence before the jury from such deeds or otherwise that all the land, if any part of it, was embraced or included in such boundaries or descriptions.

It is contended that whether or not the plaintiff's deeds by their boundaries and descriptions embraced the land in controversy, was a question of law under the facts in evidence before the jury in connection with said deeds, and the jury should have been told by the court that the deeds in plaintiff's chain of title did not embrace any part of the land sued for, lying east of a line running from the S. E. corner of the Bowles tract to the S. E. corner of the Morrow league as claimed to be located by the plaintiff, as the facts in connection with plaintiff's deeds confined his land to such line. This assignment can not be sustained. Whether or not all of the land sued for was embraced in the boundaries of plaintiff's chain of title, was dependent, not alone upon the calls in the deeds, but also upon the surveys and actual delineations of the land upon the ground;. at least it was a mixed question of law and fact. It was for the jury to say where the corners of the several tracts of land were actually located; and also it was a question for the jury to determine where the true east line of the Morrow survey was located.

8. Complaint is made that the court erred in the fourteenth paragraph of the charge by telling the jury, in effect, that in view of the uncertainty and irreconcilable conflicts in the calls for the E. line of the Morrow survey in its field notes, they could, in locating same, look to the calls for said line in the field notes of adjoining surveys, when in fact there was no uncertainty or conflict in the calls for said E. line in the field notes of the Morrow survey, nor did the evidence make any such uncertainty or conflicts in fitting such calls to the situation on the ground and in locating said E. line.

The proposition presented is that, there was no uncertainty or con-

flict in the calls for the E. line of the Morrow survey in its field notes, and the intimation to the jury that there was such uncertainty and conflicts, by giving the charge in question, was prejudicial to defendants, and was error calling for reversal. This proposition is not tenable. There was such uncertainty and conflicts in the field notes of the Morrow league as justified the court in permitting the jury to consider not only its field notes but those of adjoining surveys made at or about the same time.

9. There was no error in submitting to the jury the issue of whether or not the evidence showed that the S. E. corner of the Morrow league could be identified and located as called for in its field notes. The evidence not only justified the giving of the charge, but the preponderance of the evidence shewed the S. E. corner of the Morrow league was fixed, identified and could be found as called for in the field notes of the Morrow league.

10. Error is assigned that the trial court erred in not granting appellants a new trial. The contention is that the verdict is so uncertain that it will not support a judgment. The verdict is as follows:

"1. We, the jury, find the east line of the Morrow survey located as claimed by the plaintiff.

"2. We find the Mack Elliott fifty-acre tract of land located on the Morrow, as claimed by plaintiff.

"3. We find the land claimed by defendant Burke located on the Morrow in the Webb division.

"4. We further find that the land claimed by defendants Davis and Walton was not fenced for sufficient length of time to give the title by limitation.

"5. We find no damages against defendants as claimed by plaintiff.

"6. Finally, we give plaintiff Mills judgment against defendants Davis and Walton for 44 acres of land, and against defendant Burke for 29 acres of land, as claimed by plaintiff Mills."

It seems clear that the verdict of the jury and the judgment of the court based thereon are so specific and certain that they can be enforced.

11. The record does not show, as contended by appellants in their fourteenth assignment, that appellee recovered against Walton, Davis and Burke land not sued for, or land not described in the petition.

Finding no reversible error in the judgment, the same is affirmed.

                                                                    *Affirmed.*

Application for writ of error dismissed for want of jurisdiction.